**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-036**

**Filing Date: March 17, 2011**

**Docket No. 29,436**

**STATE OF NEW MEXICO,**

**Petitioner-Appellee,**

**v.**

**TIFFANY BOND,**

**Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Thomas J. Hynes, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Nancy M. Hewitt, Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**WECHSLER, Judge.**

**{1}**    Defendant Tiffany Bond entered a conditional plea to one count of possession of a controlled substance (methamphetamine), a fourth degree felony, contrary to NMSA 1978, Section 30-31-23(D) (2005), reserving the right to appeal the district court's denial of her motion to suppress. Because we conclude that the investigating officer unreasonably searched Defendant's purse and seized contents within it without consent, we reverse.

**BACKGROUND**

1

**{2}** On June 29, 2008, police officers were attempting to locate a white Pontiac convertible that had been stolen from the lot of Performance Auto in Farmington, New Mexico. The vehicle's global position system indicated that the vehicle was located at the intersection of Knollcrest and Kingsway. Officer Kyle Dowdy was dispatched to the location and observed the vehicle in the driveway of a residence at the identified location, when he saw two people come out of the residence and enter the vehicle. He initiated a felony traffic stop while the vehicle was still in the driveway. Officer Dowdy then detained the driver and Defendant, who was a passenger in the vehicle, in connection with his investigation. He handcuffed them and read them *Miranda* rights.

**{3}** The investigating officer, Officer David Karst, arrived at the location of the stop. Officer Karst had spoken with the manager of Performance Auto, and the manager had informed Officer Karst that he saw a woman with long hair driving the vehicle out of the lot. Officer Karst asked Defendant to step in front of his patrol unit, again read her *Miranda* rights, and placed her in the backseat of his patrol unit. Officer Karst asked Defendant if she had identification, and Defendant informed him that it was located in her wallet that was in her purse on the passenger side of the stolen vehicle. Officer Karst went to the vehicle and retrieved a brown purse with what appeared to be a phone charger in the top of it. Officer Karst also retrieved a white hand mirror, a yellow Corona hat, and a cell phone. Defendant informed Officer Karst that the yellow hat, phone charger, and mirror that were visible, as well as the brown purse, belonged to her, but the black bag or pencil bag that was inside the purse did not. Officer Karst removed the black bag from the purse and opened it to see if he could find any owner identification. Upon opening the black bag, Officer Karst discovered both paraphernalia and a crystal rock-like substance that he believed was methamphetamine.

**{4}** Defendant filed a motion to suppress, challenging the search of her purse. The district court denied Defendant's motion. Defendant entered a conditional plea, reserving the right to appeal the district court's ruling.

**MOTION TO SUPPRESS**

**{5}** We begin by defining the issue to be addressed in this case. In her motion to suppress, Defendant argued that the officer violated her rights under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution by searching her purse. The district court denied Defendant's motion to suppress on the ground that Defendant had no expectation of privacy in the black bag Officer Karst removed from Defendant's purse because Defendant had disclaimed ownership of the black bag. In making that ruling, it appears the district court assumed that Officer Karst had the right to enter Defendant's purse and remove the black bag. On appeal, Defendant does not contest that she abandoned the black bag, but argues that the officer did not have the right to lawfully retrieve the black bag from her purse. The State also submits that the issue on appeal is the officer's ability to enter Defendant's purse. We therefore limit our analysis to this issue.

2

**{6}** Furthermore, Defendant moved to suppress the evidence pursuant to both the federal and state constitutions. The State contends that Defendant failed to preserve her state constitutional claim. We need not reach the issue of whether Defendant preserved a state constitutional argument, since we are reversing based on an application of the Fourth Amendment.

**Standard of Review**

**{7}** "We engage in a two-part review of a district court's decision regarding a motion to suppress: The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (internal quotation marks and citation omitted). We therefore "review the district court's ruling on a motion to suppress to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Cline*, 1998-NMCA-154, ¶ 6, 126 N.M. 77, 966 P.2d 785.

**Defendant's Standing to Challenge the Search**

**{8}** In determining that Defendant had no reasonable expectation of privacy in the black bag because of her disclaimer of ownership, the district court ruled that Defendant lacked standing to challenge the search of the black bag. *See State v. Leyba*, 1997-NMCA-023, ¶ 9, 123 N.M. 159, 935 P.2d 1171 (stating that a defendant's "standing to challenge a search as violative of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution hinges on whether [the defendant] had a reasonable expectation of privacy in the place entered"). As we noted above, the district court did not address the issue of the officer's entry into Defendant's purse. As a result, we begin our analysis by determining whether Defendant had standing to challenge the officer's entry of her purse.

**{9}** To establish standing, a defendant must demonstrate a legitimate expectation of privacy. *See Leyba*, 1997-NMCA-023, ¶ 9. "Determining whether a search is an intrusion on a legitimate expectation of privacy requires two considerations. First, we consider whether the individual's conduct demonstrated a subjective expectation of privacy. Second, we consider whether society recognizes the individual's expectation of privacy as reasonable." *State v. Bomboy*, 2008-NMSC-029, ¶ 10, 144 N.M. 151, 184 P.3d 1045 (internal quotation marks and citations omitted).

**{10}** "[O]wnership or lawful possession generally gives rise to a legitimate expectation of privacy[.]" *State v. Celusniak*, 2004-NMCA-070, ¶ 25, 135 N.M. 728, 93 P.3d 10. However, "one can relinquish this expectation if he or she abandons the property." *Id.* "[T]he basic inquiry is whether the defendant either denied ownership of the item or physically relinquished it." *Id.* ¶ 28. There is no indication from the record that Defendant disclaimed her ownership of the purse through either her words or her actions. Nor does the

3

State argue that Defendant abandoned any claim of ownership to her purse. *See id.* ¶ 26 ("The party seeking to prove abandonment must show this intent by clear, unequivocal and decisive evidence." (internal quotation marks and citation omitted)). Moreover, this Court has previously concluded that society recognizes a reasonable expectation of privacy in an individual's purse. *See id.* ¶ 23 (citing to cases holding that "a purse is a type of container in which a person possesses the highest expectations of privacy" (internal quotation marks and citation omitted)). We therefore conclude that Defendant had standing to challenge the search of her purse, and we turn to the merits of Defendant's claim of error.

**Reasonableness of the Search of Defendant's Purse**

{11}    Under the Fourth Amendment to the United States Constitution, searches and seizures must be reasonable. *See State v. Gutierrez*, 2004-NMCA-081, ¶ 6, 136 N.M. 18, 94 P.3d 18. Warrantless searches are presumed to be unreasonable. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." (emphasis, internal quotation marks, and citation omitted)). The State bears the burden of proving that a warrantless search or seizure is reasonable. *Gutierrez*, 2004-NMCA-081, ¶ 6. "In order to prove that a warrantless seizure is reasonable, the State must prove that it fits into an exception to the warrant requirement." *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "Recognized exceptions to the warrant requirement include exigent circumstances, searches incident to arrest, inventory searches, consent, hot pursuit, open field, and plain view." *Id.*

{12}    In its response to Defendant's motion to suppress before the district court, the State argued that Defendant's statement that the black bag did not belong to her could be interpreted as granting the officer consent to remove the item from her purse. "The validity of a consensual search depends on the voluntary nature of the consent and whether the resulting search exceeds the reasonable scope of that consent." *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. Our Supreme Court has identified "the following three factors to be considered when an appeals court is assessing the voluntariness of a consent to search: (1) the consent must be unequivocal and specific, (2) the consent must be given without duress or coercion, and (3) the first two factors must be assessed with a presumption against the waiver of constitutional rights." *Id.*

{13}    Officer Karst did not testify that Defendant told him he could search her purse. The State argues that Defendant's disclaimer of the ownership of the bag within her purse can be interpreted as providing consent to enter her purse to remove the item. However, Defendant's statement was not a clear statement of consent. It could also reasonably be interpreted to have been only a statement intending to preclude ownership in the event that Officer Karst instituted a search. Given the presumption against the waiver of the constitutional right to be free from unreasonable searches and seizures, *State v. Munoz*, 2008-NMCA-090, ¶ 19, 144 N.M. 350, 187 P.3d 696, the State did not meet its burden below of demonstrating that Defendant provided the officer with consent to enter her purse.

**{14}** On appeal, the State attempts to support the warrantless search by arguing that the black bag was in Officer Karst's plain view. We disagree with the State's argument that the search of Defendant's purse can be supported under the plain view exception to the warrant requirement. "Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *See State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. As stated in *Ochoa*, the plain view exception requires that the incriminating nature of the evidence be immediately apparent. In this case, the testimony establishes that Defendant had stated that the black bag did not belong to her. This fact, alone, does not render Defendant's possession of the black bag unlawful. There was also no testimony that Defendant indicated the bag contained drugs or that the bag was stolen. Thus, the testimony does not support the requirement that Officer Karst knew the incriminating nature of the evidence at the time he removed it from Defendant's purse. As a consequence, the plain view exception does not support Officer Karst's removal of the black bag from Defendant's purse. *See id.* ¶ 14 ("[A]n officer's mere suspicion about an ordinary object, which has common, non-criminal uses, will not support probable cause for its seizure."); *see also State v. Vasquez*, 112 N.M. 363, 368, 815 P.2d 659, 664 (Ct. App. 1991) (indicating that a diaper bag taken from a vehicle was unlawfully seized pursuant to the plain view doctrine because the contents "could not be discerned from the bag's outward appearance," and thus the incriminating nature of the bag was not apparent); *State v. Zelinske*, 108 N.M. 784, 786-87, 779 P.2d 971, 973-74 (Ct. App. 1989) (recognizing that presence of a heavily taped cardboard box and deodorizer in the trunk of a vehicle did not give probable cause to justify its seizure under the plain view doctrine; these items "are used much more frequently for entirely innocent purposes than for transporting narcotics"), *overruled on other grounds by State v. Bedolla*, 111 N.M. 448, 806 P.2d 588 (Ct. App. 1991).

**{15}** Finally, the State argues that the search of Defendant's purse was reasonable under the factors set out in this Court's recent opinion in *State v. Williams*, 2010-NMCA-030, 148 N.M. 160, 231 P.3d 616, *cert. granted*, 2010-NMCERT-004, 148 N.M. 573, 240 P.3d 660. In *Williams*, this Court considered whether a search was reasonable by balancing "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." 2010-NMCA-030, ¶ 12. This Court in *Williams*, however, applied this reasonableness analysis to a search conducted incident to a valid arrest. *Id.* ¶ 8. In this case, the State does not argue that Officer Karst conducted the search of Defendant's purse pursuant to a valid arrest. Instead, it appears the State is asking this Court to determine that the State's interest in determining the ownership of the black bag justified the de minimis nature of the intrusion. We decline to do so. A reach into a protected space to retrieve an object that is not clearly contraband is not de minimis. *Cf. State v. Bomboy*, 2007-NMCA-081, ¶ 12, 141 N.M. 853, 161 P.3d 898 (stating that reaching in to a vehicle "is far from a de minimis intrusion"), *reversed on other grounds*, 2008-NMSC-029, 144 N.M. 151, 184 P.3d 1045; *State v. Valdez*, 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct. App. 1990) (holding that an officer's observation of marijuana plants from outside a residence's greenhouse did not authorize warrantless entry into the greenhouse and seizure of the plants, absent some exception to the warrant requirement).

Moreover, *Williams* does not excuse the State from its burden of demonstrating an exception to the warrant requirement.  Because the State failed to meet its burden, the district court erred in denying Defendant's motion to suppress.

**CONCLUSION**

**{16}**   For the foregoing reasons, we reverse.

**{17}   IT IS SO ORDERED.**

_____

**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**


_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Bond*, Docket No. 29,436**

| CT | **CONSTITUTIONAL LAW** |
|----|----|
| CT-FA | Fourth Amendment |
| CT-MW | Miranda Warnings |
| CT-SU | Suppression of Evidence |

| CL | **CRIMINAL LAW** |
|----|----|
| CL-CL | Controlled Substances |

| CA | **CRIMINAL PROCEDURE** |
|----|----|
| CA-MR | Motion to Suppress |
| CA-PW | Plain View |
| CA-SZ | Search and Seizure |
| CA-SR | Search Incident to Arrest |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |