This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                  **No. 34,626**

**DAVID GONZALES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

**{1}** Defendant David Gonzales appeals from his jury convictions for trafficking by possession with intent to distribute methamphetamine and possession of drug paraphernalia. He raises three issues on appeal, asserting that the district court erred in: (1) denying his motion to suppress evidence that he claims was obtained during an illegal search and seizure of his vehicle, (2) denying his motion to suppress statements he made to the arresting officer without *Miranda* warnings, and (3) denying his motion for a mistrial based on improper statements made by the prosecutor during closing arguments. We affirm.

## I.    BACKGROUND

**{2}** On May 10, 2013, at approximately 3:30 a.m., Deputy Jeff Bartram of the Bernalillo County Sheriff's Office was on patrol and stopped Defendant for speeding. During the traffic stop, Deputy Bartram approached the passenger side of Defendant's vehicle, spoke to Defendant, who was the driver of the vehicle, and detected the smell of alcohol emanating from inside the vehicle. As Michelle Martinez, the only passenger in the vehicle, spoke to the deputy, the deputy noticed that the smell of alcohol was coming from her. The deputy also observed that Ms. Martinez had bloodshot, watery eyes, and she was holding a glass containing brown liquid and ice cubes on her lap. Although Deputy Bartram did not determine the contents of the glass, he testified that it smelled like an alcoholic beverage.

{3} After receiving identification from Defendant and Ms. Martinez, Deputy Bartram returned to his vehicle to run a warrant check of the two individuals. He determined that there were no warrants for Defendant; however, there was at least one arrest warrant for Ms. Martinez.

{4} Deputy Bartram returned to Defendant's vehicle, asked Ms. Martinez to get out, and as she did so, she placed the glass with brown liquid and ice cubes on the floorboard in front of her seat. The officer arrested Ms. Martinez, escorted her to his patrol car, and issued her an open container citation. Deputy Bartram then ordered Defendant to get out of the vehicle, patted him down for weapons and contraband, took him to the front of the deputy's patrol car and instructed him to stand there, and then issued him a citation for speeding. Defendant had no weapons or contraband on his person. At that time, Defendant was not handcuffed.

{5} Previously, Ms. Martinez had asked the deputy to get her wallet from Defendant's vehicle. While Defendant was standing near the deputy's patrol car, the deputy returned to Defendant's vehicle to retrieve Ms. Martinez's wallet from the dashboard and to remove Ms. Martinez's glass, containing her drink, from the vehicle. As he bent down to pick up the glass from the floorboard, Deputy Bartram observed a small square baggie that had a "crystal-like substance inside of it" in a storage compartment under the radio. He seized the baggie, which he believed contained

3

methamphetamine, returned to his patrol car where Defendant was still standing, and asked Defendant about the baggie. Defendant informed the officer that "it's possible it could be mine." At the end of their conversation, which lasted one to two minutes, the deputy placed Defendant under arrest. Defendant's vehicle was towed, and during an inventory search of his vehicle, law enforcement officers found 32.172 grams of methamphetamine, two pipes, and a black digital scale.

{6} Defendant was charged with trafficking by possession with intent to distribute methamphetamine, possession of drug paraphernalia, and speeding. Prior to trial, Defendant filed motions to suppress the evidence and his statements to Deputy Bartram under the Federal and State Constitutions. In response, the State claimed that Deputy Bartram was justified in seizing what appeared to be an alcoholic beverage from Defendant's vehicle, which he observed in plain view, and while removing the glass containing this beverage, the deputy saw the methamphetamine in plain view. Additionally, the State asserted that the statements should not be suppressed because Defendant was not in custody when he made the statements.

{7} After a hearing, the district court denied the motions to suppress, the case proceeded to a jury trial, and Defendant was found guilty of trafficking by possession with intent to distribute methamphetamine and possession of drug paraphernalia. It is

4

from these convictions that he now appeals. Additional facts will be provided as necessary in our discussion of the issues.

## II. DISCUSSION

### A. Defendant's Motion to Suppress Evidence Obtained From His Vehicle

**{8}** Defendant argues that the district court erred in denying his motion to suppress evidence, including any controlled substances and drug paraphernalia obtained from his vehicle, because he claims that Deputy Bartram's search of his vehicle and seizure of alleged contraband was in violation of the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution.

**{9}** We review the denial of a motion to suppress as a mixed question of fact and law. *State v. Williams*, 2011-NMSC-026, ¶ 8, 149 N.M. 729, 255 P.3d 307. "We determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070 (alteration, internal quotation marks, and citation omitted); *see also State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856 (stating that "[t]he appellate court must defer to the district court with respect to findings of historical fact so long as they are supported by substantial evidence").

**{10}**     In this case, the district court included findings of fact in its order denying Defendant's motions to suppress. These findings are not challenged on appeal. Thus, we accept the district court's factual findings and address de novo whether the search and seizure of evidence were legal in this case. *See Davis v. Devon Energy Corp.*, 2009-NMSC-048, ¶ 13, 147 N.M. 157, 218 P.3d 75 ("When there are no challenges to the district court's factual findings, [the appellate courts] accept those findings as conclusive."); *see also* Rule 12-318(A)(4) NMRA (stating that an appellant's brief in chief "shall set forth a specific attack on any finding, or the finding shall be deemed conclusive" and that a contention that a finding is not supported by substantial evidence shall be deemed waived "unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence").

**{11}**     "Article II, Section 10 of the New Mexico Constitution gives broader protection to individuals in the area of automobile searches than is provided by the Fourth Amendment of the United States Constitution." *State v. Bomboy*, 2008-NMSC-029, ¶ 5, 144 N.M. 151, 184 P.3d 1045. "The Fourth Amendment allows a warrantless search of an automobile and of closed containers found within an automobile when there is probable cause to believe that contraband is contained therein." *Id.* However, "New Mexico has rejected this bright line exception to the warrant requirement and requires 'a particularized showing of exigent circumstances' in order to conduct a

warrantless search of an automobile and its contents." *Id.* (quoting *State v. Gomez*, 1997-NMSC-006, ¶ 39, 122 N.M. 777, 932 P.2d 1).

{12} "Absent exigent circumstances or some other exception to the warrant requirement, an officer may not search an automobile without a warrant." *Id.* ¶ 17; *see also State v. Duffy*, 1998-NMSC-014, ¶ 61, 126 N.M. 132, 967 P.2d 807 (stating that "[a]mong the recognized exceptions to the warrant requirement are exigent circumstances, consent, searches incident to arrest, plain view, inventory searches, open field, and hot pursuit"), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. "However, if following a lawful stop on a roadway, an item in an automobile is in plain view and the officer has probable cause to believe the item is evidence of a crime, the officer may seize the item." *Bomboy*, 2008-NMSC-029, ¶ 17; *see also State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286 ("Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime.").

{13} In this case, Deputy Bartram stopped Defendant for driving fifty-three miles per hour in a forty-five mile-per-hour speed zone. The deputy approached the passenger

side of the vehicle and observed that Defendant was the driver and there was a female passenger in the front seat. From that vantage point, the deputy observed that the passenger had bloodshot, watery eyes; she had an odor of alcohol; and she was holding a glass with ice and a brown liquid, in plain view, that looked like and smelled like an alcoholic beverage. In New Mexico, it is illegal to consume or possess an alcoholic beverage in a motor vehicle. NMSA 1978, § 66-8-138 (2013).[1] Therefore, we conclude that the deputy had probable cause to believe that the glass and its contents were evidence of a crime, and the deputy was justified in seizing the glass from Defendant's vehicle. *See Bomboy*, 2008-NMSC-029, ¶ 17; *see also Ochoa*, 2004-NMSC-023, ¶ 9 ("Probable cause exists when the facts and circumstances warrant a belief that the accused had committed an offense, or is committing an offense.").

{14}     When Deputy Bartram bent down to retrieve the glass from the floorboard, which is where the passenger had placed the glass before she was arrested for an outstanding warrant, he saw a baggie "with a crystalline substance that was located in an open air bin on the console between the driver and passenger seat near the gear shift." The deputy believed the baggie contained methamphetamine and seized it. We

---

[1]We note that this statute was last amended, effective June 14, 2013, which was after the arrest in this case. However, the amendment does not change our analysis.

8

conclude that Deputy Bartram was lawfully positioned when he observed the baggie, the incriminating nature of the baggie "with a crystalline substance" was immediately apparent, and the deputy had probable cause to seize the baggie. *See Bomboy*, 2008-NMSC-029, ¶ 17; *Ochoa*, 2004-NMSC-023, ¶ 9.

{15}    Based on the facts in this case, we conclude that seizure of both the glass and the baggie were justified by the plain view exception to the warrant requirement. We note that, based on Defendant's claim that the seizure of the glass and baggie were illegal, he argues that all evidence collected thereafter was the fruit of an unlawful search or seizure and should have been suppressed. *See State v. Ingram*, 1998-NMCA-177, ¶ 9, 126 N.M. 426, 970 P.2d 1151 ("Evidence which is obtained as a result of an unconstitutional search or seizure may be suppressed under the exclusionary rule." (internal quotation marks and citation omitted)). This argument lacks merit for two reasons. First, as discussed above, the seizure of the glass and the baggie were lawful. Second, after Defendant was arrested, additional evidence was obtained through an inventory search, which is a recognized exception to the warrant requirement, and Defendant is not challenging the inventory search on appeal. *See Duffy*, 1998-NMSC-014, ¶ 61 (recognizing inventory searches as an exception to the warrant requirement). We conclude that the district court did not err in denying Defendant's motion to suppress the evidence obtained from his vehicle.

**B.      Defendant's Motion to Suppress His Statements to Deputy Bartram**

{16}      Defendant also moved to suppress his statement to Deputy Bartram that it was possible that the small square baggie could be his, which he claims was evidence obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966). *See State v. King*, 2013-NMSC-014, ¶ 3, 300 P.3d 732 ("In *Miranda*, the United States Supreme Court articulated a warning that law enforcement must give to a suspect before the suspect can be subjected to a custodial interrogation without compromising the suspect's privilege against self-incrimination." (citing *Miranda*, 384 U.S. at 478-79)). The district court denied the motion, finding that Defendant was not in custody when he made this statement.

{17}      On appeal, Defendant argues that he was subject to a custodial interrogation, and Deputy Bartram should have advised him of his rights against self-incrimination before questioning him. He asserts that the deputy removed him from his vehicle, patted him down for weapons or contraband, ordered him to stand near the deputy's patrol car, and subjected him to questioning designed to elicit incriminating information. Defendant proceeds to argue that he did not feel free to get back into his vehicle and leave. The State argues that Defendant was not in custody when he told Deputy Bartram that the baggie of suspected methamphetamine could be his.

10

**{18}** "In reviewing a district court's ruling on a motion to suppress, we observe the distinction between factual determinations[,] which are subject to a substantial evidence standard of review[,] and application of law to the facts, which is subject to de novo review." *Bravo*, 2006-NMCA-019, ¶ 5 (alteration, internal quotation marks, and citation omitted). "Determining whether or not a police interview constitutes a custodial interrogation requires the application of law to the facts." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442. Because the facts are not in dispute, we review de novo whether Defendant was subject to a custodial interrogation. *See id.*

**{19}** Generally, "[t]he roadside questioning of a motorist pursuant to a routine traffic stop does not constitute custodial interrogation." *Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 6, 105 N.M. 771, 737 P.2d 552. However, "*Miranda* warnings are required after a traffic stop . . . if [the] defendant can demonstrate that, at any time between the initial stop and the arrest, he was subjected to restraints comparable to those associated with a formal arrest." *Id.* (internal quotation marks and citation omitted).

**{20}** To determine whether an individual is in custody for *Miranda* purposes, "the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint of freedom of movement of the degree associated with a formal

arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 23, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation omitted). In the present case, Defendant was not formally arrested when he told Deputy Bartram that the small square baggie could be his. Thus, we must "engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place in order to decide whether the custody requirement is met." *State v. Olivas*, 2011-NMCA-030, ¶ 10, 149 N.M. 498, 252 P.3d 722.

{21}     Following the suppression hearing, the district court found that, after retrieving the small square baggie of suspected methamphetamine from Defendant's vehicle, Deputy Bartram spoke with Defendant for one to two minutes; their conversation was non-confrontational; Deputy Bartram was several feet away from Defendant during the encounter with the corner of the car between them; and the conversation occurred on a street with traffic. These findings are not challenged on appeal; therefore, we accept them as conclusive. *See Davis*, 2009-NMSC-048, ¶ 13; *see also* Rule 12-318(A)(4) (establishing that uncontested findings are conclusive). Based on the facts in this case, we are not persuaded that Defendant was subjected to a custodial interrogation when Deputy Bartram asked him if the baggie belonged to him. *See State v. Javier M.*, 2001-NMSC-030, ¶ 15, 131 N.M. 1, 33 P.3d 1 ("Custodial interrogation occurs when an individual is swept from familiar surroundings into

12

police custody, surrounded by antagonistic forces, and subjected to the techniques of persuasion so that the individual feels under compulsion to speak." (omission, alterations, internal quotation marks, and citation omitted)).

{22} Although Defendant does not dispute the factual details determined by the district court, he contends that he did not feel free to return to his vehicle and leave, and at the time that Deputy Bartram asked him about the baggie, the deputy knew that he was going to arrest Defendant. We do not consider these subjective factors. *See Nieto*, 2000-NMSC-031, ¶ 20 ("Custody is determined objectively, not from the subjective perception of any of the members to the interview."); *State v. Munoz*, 1998-NMSC-048, ¶ 40, 126 N.M. 535, 972 P.2d 847 ("The test is objective: the actual subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." (internal quotation marks and citation omitted)). In *Armijo*, this Court held that a driver was not in custody during a traffic stop, even though a police officer testified that, in his view, the driver was not free to leave, because "the police officer's subjective state of mind is not the appropriate standard for determining whether an individual has been deprived of his freedom of movement in any significant way." 1987-NMCA-052, ¶¶ 1, 4, 7, 10-12.

{23} We conclude that Defendant was not subject to a restraint on his freedom of movement of a degree associated with a formal arrest. Therefore, Defendant was not

entitled to *Miranda* warnings, and the district court did not err in denying his motion to suppress his statements.

**C.      Motion for a Mistrial**

{24}      Defendant argues that the district court abused its discretion in denying his motion for a mistrial after the State improperly vouched for its case in its closing argument. During the State's rebuttal argument, the prosecutor referred to Instruction No. 2 and emphasized to the jury: "You are the sole judges of the facts in this case." **[1-13-15 Tr. 124:7-9; RP 81]** The prosecutor proceeded to say: "A lot of times the defense counsel wanted to talk about tow inventories or *Miranda* or something to that nature. That's already been decided on. If there was a bad search, if there was an involuntary confession, the judge wouldn't let it be here today." Defense counsel objected, and during a bench conference, argued that the State was improperly bolstering and moved for a mistrial with a finding of prosecutorial misconduct. The district court sustained the objection, denied the request for a mistrial, and instructed the jury to disregard the State's last sentence. The State continued to make its rebuttal argument and stated:

> As I was saying, again, the instruction is clear. You are the sole judges of the facts in this case. That means you should not be discussing whether a search warrant wasn't supposed to happen, whether *Miranda* warnings were supposed to be read. You are merely here to look at the testimony, again, and the evidence. Search warrants and *Miranda* are irrelevant in this case. You are the sole judges of the facts alone.

14

Defense counsel did not object to these latter statements. On appeal, Defendant argues that both sets of statements—the statements before the bench conference and the statements after the bench conference—were improper vouching "and led to an improper and unfair verdict."

{25}    "Where error is preserved at trial, an appellate court will review under an abuse of discretion standard." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. "Where counsel fails to object, the appellate court is limited to a fundamental error review." *Id.*; *see also* Rule 12-321(B)(2)(c) NMRA (providing that if a question for review is not preserved, an appellate court may, "in its discretion" address questions involving "fundamental error"). Defendant preserved his claim of improper vouching as to the statements before the bench conference; however, he did not preserve his claim of improper vouching as to the statements after the bench conference. *See State v. Salazar*, 2006-NMCA-066, ¶ 20, 139 N.M. 603, 136 P.3d 1013 ("We have often stated that a prompt objection and ruling by the trial court goes a long way to curing prosecutorial vouching."); *State v. Pennington*, 1993-NMCA-037, ¶ 32, 115 N.M. 372, 851 P.2d 494 ("A timely objection allows the trial court to assess the prejudicial nature of the statements and take curative steps, such as admonishing the prosecutor."). Because Defendant did not argue that the statements made after the bench conference were fundamental error, we will not

consider these statements. *See Salazar*, 2006-NMCA-066, ¶ 20 (declining to address the merits of the defendant's claim of improper vouching after noting that the claim had not been preserved and that the defendant did not argue that it was fundamental error).

{26} The New Mexico Supreme Court has articulated three factors to consider when reviewing questionable statements made during closing arguments for error: "(1) whether the statement invade[d] some distinct constitutional protection; (2) whether the statement [was] isolated and brief, or repeated and pervasive; and (3) whether the statement [was] invited by the defense." *Sosa*, 2009-NMSC-056, ¶ 26. After discussing these three factors, our Supreme Court stated that while the factors are "useful guides, . . . context is paramount." *Id.* ¶ 34. "Where evidence of guilt is overwhelming, or an improper statement is corrected by counsel or the court, reversible error is less likely." *Id.* If, however, the prosecutor's "comments materially altered the trial or likely confused the jury by distorting the evidence," the state has deprived the defendant of a fair trial, and reversal is warranted. *Id.* "Only in the most exceptional circumstances should [the appellate courts], with the limited perspective of a written record, determine that all the safeguards at the trial level have failed. Only in such circumstances should [the appellate courts] reverse the verdict of a jury and the judgment of a trial court." *Id.* ¶ 25.

16

{27}    In the present case, Defendant did not address the three factors on appeal. Instead, Defendant's central contention is that the improper statements "led to an improper and unfair verdict." We are not persuaded by this argument, particularly given the fact that the improper statement was corrected by the district court. *See id.* (stating that "a trial court can correct any impropriety by striking statements and offering curative instructions"). We note that, "[b]ecause trial judges are in the best position to assess the impact of any questionable comment, [the appellate courts] afford them broad discretion in managing closing argument." *Id.*; *see also State v. Chamberlain*, 1991-NMSC-094, ¶ 26, 112 N.M. 723, 819 P.2d 673 (explaining that district courts are given wide discretion in controlling closing statements, and a reviewing court will not conclude there is reversible error absent an abuse of discretion). Here, Defendant has not demonstrated that the district court abused its discretion in denying his motion for a mistrial based on the brief and isolated statements by the prosecutor. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that we presume correctness in the district court's rulings and the burden is on the appellant to demonstrate the district court's error); *see also State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 ("An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its

17

ruling unless we can characterize it as clearly untenable or not justified by reason." (internal quotation marks and citation omitted)); *Sosa*, 2009-NMSC-056, ¶ 31 ("[O]ur appellate courts have consistently upheld convictions where a prosecutor's impermissible comments are brief or isolated.").

{28}     Accordingly, we conclude that the district court did not abuse its discretion in denying Defendant's motion for a mistrial.

## III.     CONCLUSION

{29}     For the foregoing reasons, we affirm.

{30}     **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**

18